IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joseph J. Burns | : | |
| | : | Chapter Seven |
| Debtor | : | Case No. 5-07-bk-50140 RNO |
| _____ | : | _____ |
| | : | |
| Lee Ann Litchkofski and | : | |
| Rosemary Litchkofski | : | |
| | : | Adv. No. 5-07-ap-50123 RNO |
| Plaintiff | : | |
| v. | : | **{Nature of Proceeding:** Second Amended |
| | : | Complaint Objecting to Discharge pursuant |
| Joseph J. Burns | : | to § 523(a)(2)(A)**}** |
| | : | |
| Defendant | : | |

## **<u>Opinion</u>**[1]

Plaintiffs, Rosemary and Lee Ann Litchkofski, (jointly "Litchkofskis") seek to have their unsecured debt, arising out of a home improvement contract with the Debtor, deemed non-dischargeable. The Litchkofskis are seeking non-dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A)[2] on grounds the debt was incurred by false pretenses, false representations or fraud.[3] A consolidated, two-day trial[4] was held on this matter beginning June 3, 2008. For the reasons stated herein, the debt owed to the Litchkofskis will be included in the Debtor's discharge.

**Jurisdiction**

---

[1]Drafted with the assistance of Kathryn F. Evans, Law Clerk.

[2]Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

[3]Although the Complaint alleged non-dischargeability under § 523(a)(2)(A), (a)(6) and (a)(7), the Plaintiffs only pursued the (a)(2)(A) claim at trial and, therefore, the Court refrains from ruling on the other causes of action under the doctrine of judicial restraint.

[4]This matter was consolidated for trial with two other matters, *Malo v. Burns* Case No. 5-07-ap-50119-RNO (Bankr. M.D.Pa. 2007) and *Commonwealth v. Burns* Case No. 5-07-ap-50121-RNO (Bankr. M.D.Pa. 2007) pursuant to Fed. R. Bankr. P. 7042(1).

-1-

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O).

**Facts**

Lee Ann Litchkofski testified that sometime around the end of March, 2006, she found the Debtor after seeing a television advertisement for metal roofs. She testified that she called the number on the advertisement and left a message, after which the Debtor returned her telephone call. The Debtor denies any knowledge of the television commercial and was vague as to how he got in contact with the Litchkofskis. A few days after the telephone call, on March 18, 2006, Debtor came to the Litchkofskis' home. During the initial negotiations, the Debtor showed the Litchkofskis a photo binder with before and after photos of work he told the Litchkofskis he had done. The last page of the binder appeared to be a contractor's license from Hanover Township. The Debtor denies he showed the Litchkofskis a Hanover Township license. The Debtor testified he told the Litchkofskis he would be unable to get a license in Hanover because Hanover licenses were contingent on having a Wilkes-Barre City license. The Debtor did not have a Wilkes-Barre City license because he was involved in litigation with the Wilkes-Barre City building inspector. The Debtor claimed he explained to the Litchkofskis his troubles with the Wilkes-Barre City license but they hired him anyway. On March 18, 2006, the Litchkofskis entered into a contract[5] (hereinafter "March Contract") with the Debtor and paid him an initial $200.00 toward the total contract price of $55,000.00. Over the course of the contract, the Litchkofskis paid $27,300.00 toward the completion of the work before they terminated the Debtor's services.

Work began on the roof after the parties entered into the March Contract. Lee Ann Litchkofski testified that, although the metal roof was completed, she was unhappy with it. She stated she was upset there were no foam pieces to go between the metal ridges on the roof to prevent bees from nesting. When she confronted the Debtor about it, he told her the foam portions were unnecessary. She was also upset about the lack of ice breakers on the roof. The Debtor told her the ice breakers were only installed on commercial buildings. No evidence,

---

[5]The March 18, 2006 contract was not admitted into evidence at trial; however, a subsequent contract dated May 8, 2006 was entered into evidence by the Debtor.

Case 5:07-ap-50123-RNO    Doc 34    Filed 07/11/08    Entered 07/11/08 11:03:11    Desc
Main Document      Page 2 of 7

expert or otherwise, was presented by either party on whether the ice breakers or foam pieces were actually required by the contract, nor whether they are typically included in metal roofs for residential homes. Also, the Co-Plaintiff, Rosemary Litchkofski, neither appeared nor testified at trial.

Sometime around May 8, 2006, after a substantial portion of the roof had been completed, the Debtor and the Litchkofskis entered into negotiations to amend the original contract terms to include a specific type of windows not originally called for in the March contract. Lee Ann Litchkofski testified that after those negotiations, two original contracts were made; one for the Debtor to keep and one for her to keep. Lee Ann Litchkofski did not bring her original May 8, 2006 contract to trial. However, when presented with a photocopy of the Debtor's version of the May 8, 2006[6] contract, (hereinafter "May Contract") she testified the contract had been altered. She noted there was one significant difference between the May 8, 2006 contract she had kept and the contract presented to her as the one the Debtor had kept. The difference was an additional handwritten alteration of a term on the lower left side of each page of the three-page contract. Added to the typewritten words "CUSTOM CONSTRUCTION CORPORATION GUARANTEES ALL WORK TO BE DONE ACCORDING TO EXISTING CODES. ALL NECESSARY PERMITS INCLUDED:" was an allegedly new, handwritten qualification of the term stating: "by owner in WB + Hanover Twp." Defendant's Exhibit 20.[7] The Court finds it suspect that the additional term appears to be written in a hand that does not match any other handwriting on the document; it also appears to have been written by a different ink pen. Lee Ann Litchkofski testified the Debtor told her he would be in charge of acquiring all necessary building permits.

The Debtor was also contracted to do work on the Litchkofskis' back porch. Lee Ann Litchkofski testified that she was unhappy with the work he was doing on the back porch

---

[6] Def.'s Ex. 20.

[7] Normally, the best evidence rule would bar testimony purporting to explain the terms of a writing without introduction of Lee Ann Litchkofski's original copy of the May Contract; however, no such objection was raised at the time of trial with regard to Lee Ann Litchkofski's version of the May Contract. The best evidence rule objection was raised only as an objection to the March Contract which submission was withdrawn.

because he had put in the wrong windows and that there was unfinished electrical work.[8] The parties' relationship further deteriorated in late May, 2006. The Debtor attempted, on multiple occasions, to collect additional funds which were allegedly due and owing under the contract. Although there are conflicting stories from each side about the termination of the relationship,[9] I find the relationship was terminated in June, 2006 as a result of the Litchkofskis' refusal to make any further payments on a construction job they felt was substandard.

**Analysis**

Section 523(a)(2) provides, in pertinent part, that:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
>     (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>         (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

The objecting party bears the burden of proving by a preponderance of the evidence that the instant debt should not be discharged. *In re Graham,* 973 F.2d 1089, 1098 (3d Cir. 1992) citing *Grogan v. Garner,* 498 U.S. 279, 288-89, 111 S.Ct. 654, 660-61 (1991). Lastly, "exceptions to discharge are generally construed 'narrowly against the creditor and in favor of the debtor.' " *In re Mehta,* 310 F.3d 308, 311 (3d Cir. 2002) quoting *In re Pelkowski,* 990 F.2d 737, 744 (3d Cir. 1993).

**A) Dischargeability under § 523(a)(2)(A).**

To prevail in seeking an exception to a debtor's discharge of debt under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through

---

[8] Although Lee Ann Litchkofski was quite adamant about the poor quality of the work, no photographs or evidence other than her testimony was introduced on behalf of the Litchkofskis. The only photographic evidence of the home were pictures introduced by the Debtor showing the home under construction.

[9] The Debtor testified that the Litchkofskis called him in late May, 2006 and fired him. Conversely, Lee Ann Litchkofski testified they did not fire him but that, in fact, the Debtor just walked away.

-4-

representations which the debtor knew to be false; (2) the debtor possessed an intent to deceive; (3) the creditor justifiably relied on the false misrepresentation; and, (4) the creditor sustained damages as a result of the false misrepresentations. See, e.g., *In re Casini*, 307 B.R. 800, 815 (Bankr. D.N.J. 2004); *In re Redden*, 234 B.R. 49, 50 (Bankr. D.Del. 1999) (citing *In re Haining*, 119 B.R. 460, 463 (Bankr. D.Del. 1990)); *In re DeBaggis*, 247 B.R. 383, 389 (Bankr. D.N.J. 1999); *In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996), aff'd, 106 F.3d 52 (3d Cir. 1997), aff'd, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). The plaintiff must prove the above elements by a preponderance of the evidence. *In re Cohn,* 54 F.3d 1108, 1114 (3d Cir. 1995).

### 1) Did the Debtor Make False Representations with Intent to Deceive?

The false pretense or misrepresentation must be both material and made with the intent to deceive the party to whom it was directed. See *Field v. Mans*, 516 U.S. 59, 68, 116 S.Ct. 437, 442-43, 133 L.Ed.2d 351 (1995). Intent may be inferred from the totality of the circumstances of the case. *In re Cohn,* 54 F.3d at 1118-19.

My colleague, Judge France, noted in *In re Beamenderfer*, Case No. 1-06-ap-00119-MDF, slip op. (Bankr. M.D.Pa. filed March 25, 2008):

> Generally, courts have found construction-related debts to be nondischargeable under § 523(a)(2)(A) only when the debtor/contractor intentionally misrepresented a material fact or qualification in soliciting or obtaining the work.

*Beamenderfer* at 9. Additionally, a homeowner could establish a false representation by a showing that the contractor entered into the contract with no intent of complying with the terms of the contract. *In re Antonious,* 358 B.R. 172, 182 (Bankr. E.D.Pa 2006). There was no allegation that the Debtor entered into the contract with no intent of completing it, and in fact, he did substantially complete the roof.

Here, I find that the Debtor intentionally made two false representations. First, that he was licensed in Hanover Township; and, second, that he would obtain the necessary permits. I find Lee Ann Litchkofski's version of events, that the Debtor told her mother, Rosemary Litchkofski, that he was already licensed in the Township, to be more credible than the Debtor's version, that he told the Litchkofskis he would not be able to get a license in Hanover Township due to pending litigation in Wilkes-Barre City. I find it highly unlikely that the Litchkofskis

-5-

would have agreed to pay $55,000.00 for a new roof to be put on by an unlicensed contractor involved in other litigation. The second misrepresentation was the Debtor's representation that he would obtain the permits. I find the testimony of Lee Ann Litchkofski to be convincing that the Debtor told her that he would obtain the permits notwithstanding the handwritten modification on the May 8, 2006 contract, arguably changing the permit procurement responsibility from the Debtor to the Litchkofskis. I also find these statements to be material in that the Litchkofskis relied on Debtor's assurances that he could lawfully complete the work as a licensed contractor in the Township and that he would obtain all necessary permits.

### 2) Was the Litchkofskis' Reliance Justifiable?

I find the reliance of the Litchkofskis on the Debtor's representations that he was both a licensed contractor and that he would obtain the necessary permits to be reasonable with regard to the initial contract to construct the metal roof.

However, while I find the Litchkofskis' reliance on the Debtor that he had a license to be reasonable, the reasonableness of the reliance diminished as it became more and more evident that the Debtor's work was not what the Litchkofskis had hoped it to be. At the time of the May 8, 2006 negotiation, the roof was completed and Lee Ann Litchkofski testified she was very unhappy with the prior work on the roof. She further testified that she confronted the Debtor about the roof not being what she had expected but that the Debtor dismissed her concerns. Thus, the Court finds any reliance on the Debtor's representations during and after the negotiations of the May Contract to be less reasonable.

### 3) Did the Creditors Sustain Damages?

In order to recover under § 523(a)(2)(A), the Litchkofskis must establish by a preponderance of the evidence that they suffered damages proximately caused by the Debtor's fraudulent conduct. *In re Santos,* 304 B.R. 639, 669 (Bankr. D.N.J. 2004). I find the Litchkofskis failed to establish any damages proximately caused by the Debtor's misrepresentations about the license and the permit. Unlike the Plaintiff in the sister case to this case, *Erma Malo*[10], there appears to have been no damage to the Litchkofskis proximately caused by the Debtor's failure to get a license or a permit. No stop work order was issued by Hanover

---

[10] *Malo v. Burns* Case No. 5-07-ap-50119-RNO (Bankr. M.D.Pa. 2007)

Township prohibiting the Debtor from lawfully completing the job as a result of the failure to obtain a permit; and, the metal roof was, in fact, completed. The principal damage complained of by Lee Ann Litchkofski was that she was unhappy about the lack of foam pieces and ice breakers on the completed roof. However, no evidence, documentary or expert, was presented on whether these two items were in the original contract or whether these two items are normally included in residential metal roof installations. Further, the Debtor introduced photographic evidence showing what appeared to be a functional metal roof with no obvious defects. Also, the Debtor testified that the value of the roof, because there were four separate roofs to be completed on the home, exceeded the $25,000.00 deposit he had received prior to the Litchkofskis terminating his employment.

In sum, the Litchkofskis did establish that the Debtor made material misrepresentations to them during the March, 2006 negotiations regarding his ability to procure a license, which they reasonably relied on in entering into a contract for the Debtor to put a metal roof on their home for a total contract cost of $55,000.00. Toward that contract, the Litchkofskis paid the Debtor $27,300.00. However, the Debtor did, in fact, install a metal roof with a value of over $25,000.00. Thereafter, the Litchkofskis, despite their discontent with the Debtor's previous work, contracted further with the Debtor for new windows and work on their porch. The Debtor, although he may well have done a poor job on the porch, was never paid for the subsequent work. Further, no evidence was presented with regard to how much it would cost to fix any damage which may or may not have been caused by the substandard work the Debtor did on the porch. Therefore, I find the Litchkofskis failed to prove by a preponderance of the evidence any damages caused by the Debtor's misrepresentations.

Since the Litchkofskis have not met their burden to establish all the necessary elements for non-dischargeability, I find their claim is included within the Debtor's discharge.

An Order will be entered consistent with the foregoing Opinion.

Date: July 11, 2008

Robert N. Opel, II, Bankruptcy Judge
(BI)
*This opinion is electronically signed and filed on the same date.*